IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
2010 DEC -7  PM 5: 11

CLERK _L. Flanders_
SO. DIST. OF GA.

| | | |
|---|---|---|
| SCOTT VINCENT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. |
| | * | CV 108-067 |
| AMERICAN HONDA MOTOR CO., | * | |
| INC., | * | |
| | * | |
| Defendant. | * | |

O R D E R

This matter is before the Court on Plaintiff's Motion for Reconsideration. (Doc. No. 228.)  Upon consideration of the parties' briefs, the relevant law and the record evidence, the motion is **GRANTED** for the following reasons.

On October 7, 2010, this Court issued an Order granting in part and denying in part Defendant's motion for summary judgment.  In that Order, the Court addressed the following three distinct claims made by Plaintiff regarding the 1999 Honda Accord Coupe manufactured by Defendant: (1) the vehicle was defectively designed due to insufficient front roll stiffness, (2) the vehicle was defectively designed because it was not equipped with Vehicle Stability Assist/Electronic Stability Control ("VSA/ESC"), and (3) a failure to warn claim.

DHB (44)                                                              CCC: _____
                                                                            _____

In his motion for reconsideration, Plaintiff asks the Court to revisit the issue of whether the Honda Accord was defectively designed due to the absence of VSA/ESC. Specifically, Plaintiff asks the Court to revisit the expert testimony of Mr. Wade Gilbert.

Federal Rule of Civil Procedure 60 authorizes the relief requested in Plaintiff's motion for reconsideration. Reconsideration of a judgment, however, is an extraordinary remedy. Various courts have articulated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. E.g., Jones v. Zenk, 495 F. Supp. 2d 1289, 1309 (N.D. Ga. 2007); United States v. Battle, 272 F. Supp. 2d 1354, 1357 (N.D. Ga. 2003); Groover v. Michelin N. Am., Inc., 90 F. Supp. 2d 1236, 1256 (M.D. Ala. 2000). For a court to reconsider a judgment, the moving party "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Cover v. Wal-Mart Stores, Inc., 148 F.R.D. 294, 294 (M.D. Fla. 1993).

As an initial matter, the Court acknowledges that Mr. Gilbert's testimony was not fully considered when the Order on Defendant's motion for summary judgment was issued. The passage of time and focus upon the testimony of Mr. Wade

Allen, another expert for Plaintiff, resulted in a simple oversight regarding Mr. Gilbert's testimony.[1]   Accordingly, the Court will now consider whether Mr. Gilbert's testimony presents a genuine issue of material fact sufficient for Plaintiff to proceed to trial on the VSA/ESC issue, or whether Defendant is entitled to judgment as a matter of law on that issue.

## I.  Mr. Gilbert's Testimony

Mr. Gilbert is an expert witness for Plaintiff.  A review of the record shows that the introduction of his expert testimony was intensely contested.  However, by Order dated August 6, 2009, Mr. Gilbert was included as an expert witness after the expiration original scheduling deadline.  (Doc. No. 161.)  Thereafter, Plaintiff filed the expert opinion of Mr. Gilbert in the form of a report prepared by his engineering firm, Gilbert Engineering, LLC.  (Doc. No. 75, Ex. "F".)   In this report, Mr. Gilbert states that his firm was

> asked to assist in the investigation and evaluation of the accident by:
>
> A. Analyzing the subject accident.
>
> B. Discussing the effect of a yaw control system on the subject matter.

---

[1]  The ultimate in candor is required of counsel admitted to the bar of this court.  Counsel and the parties should expect nothing less from the bench.

C. Determining whether or not there were any pre-existing vehicle conditions that may have contributed to this accident.

(Id. at 2.)

After cataloguing his qualifications and body of work, Mr. Gilbert discusses Plaintiff's accident, yaw control systems such as VSA/ESC in general, and tests he had conducted involving stability systems installed on three sport utility vehicles and a 2002 Volvo S80 T6. (Id.) After a discussion of driver response studies, Gilbert issues his "Opinions/Conclusions":

1. The Vincent rollover accident of a 1999 Honda Accord EX 2-door was an oversteer event that would have been prevented by an adequate yaw control system. This is one of the very accident scenarios that yaw control systems are designed to prevent.

2. Based on the Vincent accident dynamics and the dynamic testing of yaw control systems, this accident would not have happened if the Honda Accord would have been equipped with an adequate yaw control system. Honda's Vehicle Stability Assist system was available on vehicles in Japan as early as 1998.

3. The vehicle dynamics and driver inputs involved in the Vincent accident are well within those seen in driver response studies and are normal and foreseeable emergency responses that can bring a vehicle into its non-linear handling range. Average drivers are not familiar with vehicle handling characteristics at the limit, specifically oversteer. This is why yaw control systems have such incredible light truck rollover accident prevention statistics.

4. There were no pre-accident mechanical failures found on the vehicle that caused or contributed to this accident.

4

(<u>Id.</u> at 17.)

Defendant deposed Mr. Gilbert on March 16, 2010, at which time he stated, *inter alia*, that "he was not aware of any rule or recommended practice regarding roll stiffness distribution" and that "all vehicles can be spun out." (Gilbert Dep. at 38 and 132.)   Mr Gilbert also stated that he was offering no opinion on whether the Honda Accord was unreasonably dangerous and defective. (<u>Id.</u> at 93-94, 97-98.)   Defendant specifically cites to these statements in its response to the motion for reconsideration.

## II.  Design Defects in Georgia

As stated in the Order on October 7, 2010, Georgia courts apply a risk-utility balancing test to determine if a product was defectively designed.   (Doc. No. 227 at 6-7.)   This balancing test was first applied in <u>Banks v. ICI Ams., Inc.</u>, 450 S.E.2d 671 (Ga. 1994).   In <u>Banks</u>, the Georgia Supreme Court explicitly adopted a risk-utility analysis to reach the "legal conclusion that a product's design specifications were partly or totally defective." <u>Id.</u> at 673.

> This risk-utility analysis incorporates the concept of "reasonableness," i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to

eliminate the risk.

Id.

The Banks court also explicitly discussed why courts in Georgia should abandon prior precedent and allow evidence of alternative designs in products liability cases.

> One factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design . . . . The essential inquiry, therefore, is whether the design chosen was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware. Indeed, the reasonableness of choosing from among various alternative product designs and adopting the safest one if it is feasible is considered the "heart" of design defect cases, since it is only at their most extreme that design defect cases reflect the position that a product is simply so dangerous that it should not have been made available at all.

Id. at 674 (internal citations omitted).

However, while the court in Banks incorporated evidence of alternative designs as a factor in the risk-utility analysis, it cautioned "under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury." Id. at 675. In other words, Defendant in this case is not required to produce an accident proof vehicle.

Georgia courts are very clear on when judgment as a matter of law is appropriate in a design defect case.

6

> As the [Georgia] Supreme Court held in Ogletree
> VII, a product's risk and benefits will rarely be
> determined as a matter of law when any of the Banks
> factors is disputed.  Indeed, by adopting the risk-
> utility analysis, Georgia has actually increased
> the burden of a defendant, in seeking a judgment as
> a matter of law, to show plainly and indisputably
> an absence of *any* evidence that a product as
> designed is defective.

Dean v. Toyota Indus. Equip. Mfg., Inc., 540 S.E.2d 233, 237
(Ga. Ct. App. 2000).

### III. Motion for Reconsideration

Plaintiff asks the Court to reconsider Mr. Gilbert's testimony as outlined above.   In his motion for reconsideration, Plaintiff states that Gilbert's testimony

> provide[s] ample support for [the] claim that in
> the context of this case [Defendant's] American-
> made 1999 Accord Coupe was defectively designed
> because it was not equipped with VSA/ESC - an
> obvious practical and feasible alternative design
> which [Defendant] already had extensive knowledge
> of because Honda had already installed that very
> same anti-yaw system in its Japanese-made 1999
> Accords.

(Doc. No. 228 at 6 (emphasis added).)

Furthermore, Plaintiff argues in his motion for reconsideration that Gilbert's report provides

> sufficient evidence upon which the Court should
> have denied [Defendant's] Motion for Summary
> Judgment on Plaintiff's claim that the subject
> vehicle was defectively designed because Honda
> obviously knew, or should have known, that
> Plaintiff's American-made 1999 Honda Accord Coupe
> should have had the VSA/ESC system just like

7

Honda's Japanese-made Accords of the same year did. (<u>Id.</u> at 8 (emphasis added).)

In its memorandum in opposition to Plaintiff's motion for reconsideration, Defendant cites Gilbert's statements during his deposition that he was offering no opinion on whether the subject vehicle was defective as designed. Defendant argues that Gilbert's identification of an alternative design and opinion that it would have prevented the crash does not satisfy Plaintiff's burden of proof. Defendant states that if "identifying an alternative design were all that were required in order for a plaintiff to maintain a design defect claim, then a manufacturer would, in effect, be required to design an accident-proof vehicle." (Doc. No. 230 at 8.) Defendant continues that "there is no evidence that it was unreasonable for Honda, in 1999, to design, manufacture and sell a vehicle that did not have ESC." <u>Id.</u>

In his reply, it appears Plaintiff's claims have undergone a metamorphosis from the allegations of the complaint. Instead of claiming two separate and independent design defects, Plaintiff claims:

> [T]here is ample evidence that Plaintiff's 1999 Honda Accord was <u>defective due to insufficient front roll stiffness</u> and, importantly for purposes of this Motion, <u>this defect could have been corrected in either one of two ways</u>: (1) adjust and improve the vehicle's roll stiffness at nominal additional cost by increasing the diameter of the front stabilizer bar by only 12%, or (2) install a

8

yaw control system like VSA/ESC on the car as that
would enable the vehicle to maintain directional
stability in a foreseeable accident avoidance
maneuver precisely like the one in issue here where
Mr. Vincent was injured.

(Doc. No. 232 at 2.)[2]


IV.   **Discussion**

The Court finds the case of <u>Davenport v. Ford Motor Co.</u>,
No. 1:05-cv-3047-WSD, 2007 WL 4373601 (N.D. Ga. Dec. 12,
2007), instructive.   In <u>Davenport</u>, Plaintiffs Robert and
Masami Davenport ("Davenports") brought suit against
Defendants Ford Motor Company and Robert Hudson Ford Lincoln
Mercury (collectively referred to as "Ford") alleging, among
other things, a design defect claim relating to the right rear
seat belt.  <u>Id.</u> at *3.  The design defect claim alleged that
the seat belt as designed allowed too much of the belt to
spool out in a crash, resulting in their daughter suffering a
fatal skull fracture.  <u>Id.</u>  The Davenports further argued that
had Ford adopted a feasible alternative technology called "web
grabber," then their daughter would not have struck her head
because not as much of the belt would have been allowed to
spool.  <u>Id.</u>

---

[2] The Court is mindful that minor modifications occur in
most, if not all, litigation.  The parties are reminded that
we are now at the point of requiring the submission of a
pretrial order.  From that point on continuity in the
description of the claims is expected.

9

Ford argued that the Davenports had failed to provide sufficient evidence to prove the prima facie elements of the product liability claim.  <u>Id.</u>  After discussing the <u>Banks</u> risk-utility factors and highlighting the importance of a feasible alternative design, the court summarized the evidence presented by Davenports.

> The Davenports have provided expert testimony stating: (1) the seat belt system in the Sable, working as designed, was prone to allow excessive "spool"; (2) excessive spool proximately caused Kristen Davenport's fatal skull fracture; and (3) at the time of the Sable's manufacture, Ford knew of a safer alternative "web grabber" seat belt design, but elected not to use it.

<u>Id.</u>

The court then denied Ford summary judgment on the design defect claim because the Davenports had "raised a genuine issue of fact regarding the reasonableness of Ford's seat-belt design choice."  <u>Id.</u>

Defendant in the instant case cites to <u>Davenport</u> in its reply brief, arguing that the case stands for the proposition that "a plaintiff must have evidence that a product's design was unreasonably dangerous, there were practicable and feasible alternative designs, and the decision to not adopt those designs caused the alleged injury."  (Doc. No. 209 at 8.)  Defendant then states that "Mr. Gilbert's opinion fails to address whether or not including VSA on the Accord renders the vehicle unreasonably dangerous."  <u>Id.</u>

The issue in dispute is whether the testimony of Mr. Gilbert provides sufficient evidence to raise a genuine issue of material fact as to whether the Plaintiff's 1999 Honda Accord Coupe was defectively designed because it did not have VSA/ESC. Mr. Gilbert essentially states two things pertinent to this dispute. First, an adequate yaw-control system, like VSA/ESC, would have prevented the Plaintiff's accident and consequent injuries. Second, Honda knew of an adequate yaw control system available on cars manufactured the same year in Japan and chose not to include that feature on its car.

Defendant contends that Mr. Gilbert's testimony merely provides evidence of an alternative design. Indeed, Mr. Gilbert explicitly states that he offers no opinion on whether the Honda Accord was defectively designed. Defendant further contends that if Mr. Gilbert's testimony is sufficient to survive a motion for summary judgment then this Court will be requiring it to manufacture an accident-proof vehicle.

Mr. Gilbert's testimony does not suggest or require the construction of an accident-proof vehicle. Rather, Gilbert opines only that the adoption of an alternative design (VSA/ESC), which was feasible at the time (it was available on similar vehicles in Japan), would have prevented the accident at issue in this case. Defendant's focus on whether or not Plaintiff's expert witness opines that the subject vehicle was

defective as designed is misplaced.   Rather, as discussed earlier, the inquiry conducted through the risk-utility analysis laid out in <u>Banks</u> is essentially a question of whether the design adopted by Defendant was reasonable.

To utilize the rationale of <u>Davenport</u>, Plaintiff has provided evidence, whether direct or by reasonable inference, that: (1) the Vincent's 1999 Honda Accord Coupe as designed was unstable in a foreseeable accident avoidance maneuver; (2) the instability of the Vincent's 1999 Honda Accord Coupe proximately caused the accident which injured Plaintiff; and (3) at the time of the 1999 Honda Accord Coupe's manufacture, Defendant knew of a safer alternative VSA/ESC option, but elected not to use it.


**V. Conclusion**

In the Court's prior Order granting summary judgment on the VSA/ESC, I concluded that sufficient evidence was not presented to create a genuine issue of material fact.   Upon reconsideration I now conclude that Mr. Gilbert's testimony and opinions provide evidence that support Plaintiff's contention that a safer feasible alternative design was available, that alternative design would have prevented the accident, and Defendant chose not to adopt it.   As stated in <u>Dean</u>, when any of the factors outlined in the <u>Banks</u> risk-

12

utility test are in dispute, then it is not appropriate for the Court to decide the issue as a matter of law.[3]

Accordingly, Plaintiff's motion for reconsideration is **GRANTED**, and the case shall proceed to trial on Plaintiff's claim that the Honda Accord Coupe was defectively designed because it was not equipped with VSA/ESC.  As stated in the previous Order, the issue of whether the Honda Accord Coupe was defectively designed because of insufficient front roll stiffness will also proceed to trial.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of December, 2010.

_____
UNITED STATES DISTRICT JUDGE

---

[3] Obviously, the testimony of Mr. Gilbert, like that of Mr. Allen, will invite a sifting, perhaps damaging, cross examination.  The question now before the court is neither the weight nor the credibility of their evidence, but its threshold sufficiency.  Whether Mr. Gilbert's or Mr. Allen's opinions can withstand a jury's scrutiny in the bright light of trial is a prospect far from certain.

AO 72A
(Rev.8/82)