IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SCOTT VINCENT,                          )
                                        )
    Plaintiff,                          )
                                        )
vs.                                     )   CIVIL ACTION No: CV108 067
                                        )
AMERICAN HONDA MOTOR CO.,               )
INC.                                    )
                                        )
    Defendant.                          )

## JOINT CONSOLIDATED PROPOSED PRETRIAL ORDER

The parties submit the following proposed pretrial order following their in-person meeting on January 31, 2011 at the offices of McKenna, Long & Aldridge LLP in Atlanta, Georgia. The meeting began at 10:00am and finished at 11:00am. Present on behalf of the Plaintiff were Mr. Kenneth Royal and Mr. James Carter. Present on behalf of American Honda Motor Co., Inc. were Mr. Christopher Spencer, Mr. Charles Reed, Ms. Jill Kuhn, and Mr. Suneel Gupta.

**1.**    **Counsel are to discuss and agree on every possible factual stipulation. The stipulations must be reduced to writing, signed and filed with the consolidated proposed pretrial order as ATTACHMENT "A" hereto.**

The parties' Stipulated Facts are attached hereto as "Attachment A."

**2.**    **As ATTACHMENT "B" to the proposed pretrial order, the parties may, but are not required to, submit questions which they desire the Court to propound to jurors concerning their legal qualifications to serve and any other questions they wish propounded for information purposes. If the parties choose to submit general voir dire questions hereunder, they may submit the questions jointly as one attachment or separately as ATTACHMENTS "B-1" and "B-2".**

The parties' proposed voir dire is attached as "Attachments B-1 and B-2."

**3.**    **State the names of all parties, firms and attorneys to be used in qualifying the jury. State the name of any insurance company involved, and whether it is a stock or mutual company. State the names of all counsel who are members of any firm involved on a**

contingent fee basis.  **At the pretrial conference, counsel may be required to disclose policy limits and details of any insurance coverage.**

    a.    Scott Vincent

    b.    James Carter, counsel for Mr. Vincent.

    c.    Hurt, Stolz & Cromwell, LLC, a law firm at which Mr. Carter is employed.

    d.    Kenneth Royal, counsel for Mr. Vincent.

    e.    Royal & Vaughan, PC, a law firm at which Mr. Royal is employed.

    f.    Charles C. Stebbins, counsel for Mr. Vincent.

    g.    Warlick, Tritt, Stebbins & Murray, LLP, a law firm  at which Mr. Stebbins is employed.

    h.    American Honda Motor Co., Inc.

    i.    Theodore Klaus, a representative of American Honda Motor Co., Inc.

    j.    Chris A. Christensen, a representative of American Honda Motor Co., Inc.

    k.    Brad A. Safon, in-house counsel for American Honda Motor Co., Inc.

    l.    Christopher C. Spencer, counsel for American Honda.

    m.    Elizabeth Kinland Shoenfeld, counsel for American Honda.

    n.    Carla Stone, paralegal for Mr. Spencer and Ms. Shoenfeld.

    o.    O'Hagan Spencer LLP, Mr. Spencer's and Ms. Shoenfeld's law firm.

p.      Charles K. Reed, counsel for American Honda.

q.      Jill C. Kuhn, counsel for American Honda.

r.      Suneel C. Gupta, counsel for American Honda.

s.      McKenna Long & Aldridge LLP, the law firm at which Mr. Reed, Ms. Kuhn and
        Mr. Gupta are employed.

**4.     Identify the basis upon which the jurisdiction of this Court is based and any
questions relating to its jurisdiction.**

Jurisdiction for this action is based on diversity of the parties. Plaintiff Scott Vincent is a
citizen of South Carolina. (Compl. ¶ 1). The remaining defendant, American Honda Motor Co.,
Inc. is a citizen of California. (Compl. ¶ 4). Therefore, complete diversity exists between the
parties pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the jurisdictional
threshold of $75,000.00. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).

There are no questions relating to the jurisdiction of this matter by this Court.

**5.     List any motions or other matters in the case which remain unresolved. Any motion
not so enumerated shall be deemed withdrawn by the moving party.**

On February 9, 2011, Honda filed two notices seeking to apportion fault with persons
who are not parties in this case. (Doc. Nos. 240, 241). Plaintiff intends to file a Motion in
Limine or a Motion to Strike these "notices of non-party fault" and will be requesting a ruling on
this motion prior to trial. There are no other unresolved motions at this time; however, the
parties anticipate filing motions *in limine* in accordance with deadlines set pursuant to the Local
Rules or this Court's orders.

**6.     All discovery is to be completed pursuant to the Local Rules. The date of the
conclusion of the discovery process and the expected completion of any untranscribed
deposition shall be stated.**

Per the Court's Scheduling Order, discovery is complete.  Fact discovery closed on July 16, 2009.  All expert depositions are complete.  Either party may depose any late-named witness allowed by the Court or any expert whose opinions have been supplemented because of recent developments.  The parties may seek to take depositions for use at trial.  Plaintiff objects to the use of the words "seek to" in the preceding sentence. Plaintiff reserves the right to take depositions for use at the trial provided they are completed at least two weeks prior to the date set for trial.

**7.     State whether the names of the parties in the above-captioned case(s) are complete and correct and whether there is any question of misjoinder or non-joinder.**

The names of the parties are correct and complete, and there are no questions of misjoinder or non-joinder.

**8.     Outline of plaintiff's case.**

**NOTE:     PLAINTIFF(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH.  AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

**Plaintiff(s) shall furnish a <u>short</u>, <u>succinct</u>, factual and narrative statement of the cause of action.  This statement should not be argumentative and should not recite evidence.  In no event shall the statement be more than one page.**

In the late 1990s, Honda designed, developed and sold as new a 1999 Honda Accord Coupe.  As designed, the 1999 Accord Coupe was defective.  In order to give it "sporty" handling, Honda installed a front stabilizer bar that was too weak for the car.  The weak stabilizer bar would cause the car to oversteer during emergency steering conditions.  This oversteer would cause the car to spin out of control.  Honda knew that the weaker stabilizer bar would cause the car to spin out during emergency steering to avoid a hazard in the road.  Honda also knew that it should have installed either a stiffer front stabilizer bar, or else it should have equipped the car with electronic stability control like it did in the 1998 and 1999 Accords that were sold in Japan as the Torneo.

Honda's electronic stability control system was known as "Vehicle Stability Assist," or "VSA." In 2001, Candice Vincent bought a used 1999 Accord Coupe from the Honda dealer in Augusta. On June 12, 2006, she was driving the Accord southbound on I-75 near Calhoun, GA. She was in the left-hand lane of the highway. Her husband, Scott, was riding in the right front seat and was wearing his lap and shoulder belt. As she drove along, a car which was passing her on the right suddenly pulled over into Candice's lane. Candice steered hard to the left to miss the car and went into the left hand emergency lane. She then steered hard right to avoid hitting the left side guard rail. When she steered back to the right, the Accord spun out of control. The Accord spun to the right and crossed all three lanes of the highway. It hit the right hand guard rail, crossed over or through the guard rail and rolled over. When it rolled over, the Accord's roof crushed and broke Scott's neck. Scott is now paralyzed and a permanent quadriplegic.

Had the Accord had a either stiffer front stabilizer bar or Honda's VSA system, it would not have gone out of control and this wreck would not have happened.

Objection by Honda: Honda objects to the portion of Plaintiff's outline of the case that reads, "When the Honda overturned, its roof crushed. The crush of the roof broke Scott Vincent's neck." As acknowledged in this Court's order (Doc. 121, p. 2, as well as by Plaintiff in a brief regarding his motion to compel (Doc. 81 p. 2)), Plaintiff abandoned his roof crush claim. Plaintiff's attempt to slip in an abandoned roof crush allegation is highly prejudicial to Honda.

Response of Plaintiff to Honda's Objection: Honda's objection is specious and without merit. When the wreck occurred and the Honda overturned, the roof on the passenger's side where Mr. Vincent was riding collapsed or crushed inward into the occupant compartment and Mr. Vincent's neck was broken. That is a statement of fact, and not simply argument, which

informs the Court and jury of the cause of Mr. Vincent's injuries.  It is irrelevant that Plaintiff decided to not pursue a product liability claim against Honda for the roof crush.  Since the crush of the vehicle's roof in this case is a statement of fact on the issue of injury causation, the Plaintiff is clearly entitled to inform the Court and jury of these facts and include this as a part of the outline of Plaintiff's case.  Moreover, Honda cannot be permitted to dictate what factual statements Plaintiff includes, or does not include, in his case outline.  Should Honda choose to ignore the evidence and their own expert witnesses' testimony and dispute that the roof of the car crushed in this wreck, they will have the opportunity to do so at trial.  In sum, Honda is not entitled to hide this fact from the jury.

9.     **Outline of defendant's case.**

**NOTE:     DEFENDANT(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH.  AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

**Defendant(s) shall furnish a short, succinct, factual and narrative statement of the cause of action.   This statement should not be argumentative and should not recite evidence.  In no event shall the statement be more than one page.**

The Honda Accord is one of the most popular and best selling vehicles of all time.  It is exceptionally well-engineered.  Nothing about the Honda caused this crash.  Rather, the crash occurred because Candice Vincent overreacted to a common situation and steered the vehicle so violently that she went off the road to the left, then shot across three lanes of highway traffic and slammed into and clear over a guardrail.

There is no vehicle that cannot be steered off the road if that is what the driver's hands and feet command it to do.  The 1999 Honda Accord is no exception.  It is being suggested in this case that there is something about the vehicle's roll stiffness distribution that is defective.  Honda submits that there is no basis at all for this criticism.  There is nothing odd or unusual

6

about the way in which the 1999 Honda Accord handles or responds to driver inputs.  It is also

being suggested that this vehicle is defective because it did not have a new technology known as

Electronic Stability Control.  Only a very small number of vehicles on the market in 1999 had

this kind of technology.  Nearly 99% of vehicles on the road in that time frame did not have this

technology.   Besides,  Electronic  Stability  Control  cannot  prevent  a  driver  from  steering

violently, and it cannot keep a driver from overreacting and steering off the road.

   This crash occurred because of driver error, pure and simple.

**10.   In all cases in which violation of the United States Constitution or a federal or state statute or regulation is alleged, the party making such claim shall specifically state the constitutional provision and/or statute allegedly violated and the specific facts on which such alleged violation is based.  The party shall detail the damage or relief sought pursuant to such claim and recite supporting authority.**

   **By Plaintiff**:  O.C.G.A. §§ 51-1-1; 51-1-2; 51-1-6; 51-1-9; 51-1-11; 51-1-13; 49 U.S.C.

§§ 30118(c), 30119, 30120.

   *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (1994):

   "Numerous lists of factors to be considered by the trier of fact in balancing the risk of the product against the utility or benefit derived from the product have been compiled by various authorities. One factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design. *O'Brien v. Muskin Corp.*, 94 N.J. 169, 463 A.2d 298, 305 (1983). See 78 ALR4th 154." *Banks* at 674.

   "[W]e can no longer accept the position that a manufacturer cannot be liable for injuries proximately caused by a product that functions for its intended use, regardless of the risks associated with the product and its utility to the public or the plaintiff's ability to adduce evidence that a feasible alternative design, which could have prevented or minimized the plaintiff's injury, was available at the time the manufacturer made its design, manufacturing, and marketing decisions." *Banks* at p. 675.

   "We agree with the importance placed on the alternative safer design factor and now hold that in determining whether a product was defectively designed, the trier of fact may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible 5. *Rix v. General Motors Corp.*, 222 Mont. 318, 723 P.2d 195, 202(II) (1986). *Banks* at 674-675."

*Dean v. Toyota Indus. Equip. Mfg., Inc.*, 540 S.E.2d 233, 237 (Ga. Ct. App. 2000).
*Jones v. NordicTrack, Inc.*, 274 Ga. 115, 550 S.E.2d 101 (2001).
*Carmical v. Bell Helicopter Textron, Inc., a Subsidiary of Textron, Inc.*, 117 F.3d 490 (1997).
*Davenport v. Ford Motor Co.*, No. 1:05-cv-30472007 2007 WL 4373601, at *3 (N.D. Ga. 2007).

As stated in section 8 of this pre-trial order, Plaintiff was severely and permanently injured because the subject automobile that was designed, manufactured and sold as new by Honda was defective because: (1) the front stabilizer bar on the car was too weak and, therefore, the car was unstable and subject to 'oversteer' and loss of driver control in an emergency maneuvering situation like present in this case; and (2) the car did not have a safety feature on it known as Electronic Stability Control ("ESC"), or as Honda calls it, Vehicle Stability Assist ("VSA"), that was used by Honda and other car makers as a form of yaw control to stabilize their vehicles before the Vincents' Honda Accord Coupe was made.  Either or both of these defects, had they been corrected, would have stabilized the Vincents' Honda and prevented the wreck from happening.

Plaintiff is seeking to recover damages for:

1.    Past and future medical expenses;

2.    The cost of caring for Plaintiff from the date he was injured through the remainder of his life (i.e., the cost of Plaintiff's "Life Care Plan");

3.    Past and future lost income; and

4.    General compensatory damages as a result of Plaintiff's catastrophic injury, permanent impairment and disability, as well as past, present and future physical and mental pain and suffering, or "human damages."

**By American Honda Motor Co., Inc.**:  AHM is not making any allegations of the violation of any Constitutional provision or of any federal or state statute or regulation pursuant to which it is seeking to recover damages.

**11.**   **In tort cases, any party bearing a burden of proof shall list each and every act of negligence or intentional tort relied upon.**

    **(a)**   **Under a separate heading, state all relevant statutes, rules, regulations and ordinances allegedly violated. Also, recite any supporting authority.**

<u>By Plaintiff</u>:  O.C.G.A. §§ 51-1-1; 51-1-2; 51-1-6; 51-1-9; 51-1-11; 51-1-13; 49 U.S.C. §§ 30118(c), 30119, 30120.

*Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (1994):

"Numerous lists of factors to be considered by the trier of fact in balancing the risk of the product against the utility or benefit derived from the product have been compiled by various authorities. One factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design. *O'Brien v. Muskin Corp.*, 94 N.J. 169, 463 A.2d 298, 305 (1983). See 78 ALR4th 154." *Banks* at 674.

"[W]e can no longer accept the position that a manufacturer cannot be liable for injuries proximately caused by a product that functions for its intended use, regardless of the risks associated with the product and its utility to the public or the plaintiff's ability to adduce evidence that a feasible alternative design, which could have prevented or minimized the plaintiff's injury, was available at the time the manufacturer made its design, manufacturing, and marketing decisions." *Banks* at p. 675.

"We agree with the importance placed on the alternative safer design factor and now hold that in determining whether a product was defectively designed, the trier of fact may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible 5. *Rix v. General Motors Corp.*, 222 Mont. 318, 723 P.2d 195, 202(II) (1986). *Banks* at 674-675."

*Dean v. Toyota Indus. Equip. Mfg., Inc.*, 540 S.E.2d 233, 237 (Ga. Ct. App. 2000).
*Jones v. NordicTrack, Inc.*, 274 Ga. 115, 550 S.E.2d 101 (2001).
*Carmical v. Bell Helicopter Textron, Inc., a Subsidiary of Textron, Inc.*, 117 F.3d 490 (1997).
*Davenport v. Ford Motor Co.*, No. 1:05-cv-30472007 2007 WL 4373601, at *3 (N.D. Ga. 2007).

As stated in section 8 of this pre-trial order, Plaintiff was severely and permanently injured because the subject automobile that was designed, manufactured and sold as new by Honda was defective because: (1) the front stabilizer bar on the car was too weak and, therefore, the car was unstable and subject to 'oversteer' and loss of driver control in an emergency maneuvering situation like present in this case; and (2) the car did not have a safety feature on it

known as Electronic Stability Control ("ESC"), or as Honda calls it, Vehicle Stability Assist ("VSA"), that was used by Honda and other car makers as a form of yaw control to stabilize their vehicles before the Vincents' Honda Accord Coupe was made.  Either or both of these defects, had they been corrected, would have stabilized the Vincents' Honda and prevented the wreck from happening.

**By American Honda Motor Co., Inc.:**  Ms. Vincent violated the following Georgia motor vehicle laws: O.C.G.A. § 40-6-390 (reckless driving) and O.C.G.A. § 40-6-48 (failure to maintain lane).  If the jury accepts the testimony of Ms. Vincent, then the Phantom Driver of the vehicle that allegedly traveled into Ms. Vincent's lane of travel violated the same statutes.

**(b)    List all items of damages claimed or non-monetary relief sought.**

**By Plaintiff:**  Plaintiff seeks to recover for the following items of damages:

1.    Past and future medical expenses;

2.    The cost of caring for Plaintiff from the date he was injured through the remainder of his life (i.e., the cost of Plaintiff's "Life Care Plan");

3.    Past and future lost income; and

4.    General compensatory damages as a result of Plaintiff's catastrophic injury, permanent impairment and disability, as well as past, present and future physical and mental pain and suffering, or "human damages," all as determined by the jury.

**By American Honda Motor Co., Inc.:**  Not applicable.

**(c)    In all cases involving alleged permanent injuries or death, furnish a full statement as to the age, alleged life expectancy and/or probable duration of the injuries, and earnings, income tax records or other records to prove earnings.**

**By Plaintiff:**  At the time he was injured in the subject automobile wreck that occurred on June 12, 2006, Plaintiff Scott Vincent was 28 years old.  According to the Annuity Mortality

Table for 1949, Ultimate, which is approved for use in this case by O.C.G.A. §24-4-45, Mr. Vincent's life expectancy from that point forward was 46 more years. His injuries are permanent and he is totally disabled and unable to engage in gainful employment for the remainder of his life. Mr. Vincent was a skilled carpenter by trade who generally worked 40 hours or more per week at the time he was injured and permanently incapacitated in 2006. Prior to his injury, Mr. Vincent also performed carpentry and other work occasionally in the evenings and a couple of weekends per month to earn additional income. He was earning approximately $50,000 per year at the time he was injured.

**By American Honda Motor Co., Inc.:** Not applicable.

12.     **In contract cases or any other action not addressed in paragraphs 10 or 11, any party having a burden of proof shall outline the particular alleged breach of contract or the basis of any other cause of action, enumerate any applicable statute involved, and detail the damages or relief sought and recite appropriate supporting authority.**

The parties agree that this paragraph is not applicable in this action.

13.     **If there is any dispute as to agency, state the contentions of the parties with respect to agency.**

The parties agree that there are no disputes as to agency in this case.

14.     **State who has the burden of proof (including any affirmative defenses or special issues) and who has the opening and closing arguments to the jury.**

Plaintiff has the burden of proof on his primary claims. AHM has the burden of proof on its affirmative defenses. Plaintiff and AHM will present opening and closing arguments to the jury. Plaintiff will open first, and will do an initial closing and a rebuttal. Plaintiff objects to limitation of his final closing argument to only rebuttal as the proper scope of counsel's argument is within the sound discretion of the trial court.

15.     **Under this paragraph, both plaintiff(s) and defendant(s) should separately list the witnesses whom each <u>will</u> have present at the trial and those whom each <u>may</u> have present at the trial. Witnesses intended to be used solely for impeachment shall be listed; however, if a party has a genuine reason for not listing and disclosing an impeachment witness, such**

11

party may address the Court *ex parte* and seek a ruling as to whether disclosure may be properly withheld.  A representation that a party <u>will</u> have a witness present may be relied on by the opposing party unless notice to the contrary is given in sufficient time prior to trial to allow the opposing party to subpoena the witness or obtain his testimony.  If a witness is not listed when the proposed pretrial order is filed, the Court will not allow the addition of a witness by any party, EXCEPT for providential or other good cause shown to the Court by application for amendment to this Order.

<u>**By Plaintiff:**</u>

(a)   Plaintiff <u>will</u> have at trial:

Scott Vincent

(b)   Plaintiff <u>may</u> have present at trial:

Aiken Regional Medical Center representative

R. Wade Allen

Dr. Jonathan H. Anderson

Augusta Rehabilitation Associates representative

Dr. Donald E. Barker

Richard Barton

Ashley Biles

Gordon County Deputy Bohannan

Dr. R. Phillip

Dr. Edward Burton, MD

Darren Cartin

Walt Coffey

Dr. Robert D. Coston

Dr. Benjamin W. Dart, IV

Gordon County Fireman Ron Ely

Erlanger Health System representative

Dr. Geoffrey Germane

Robert Giancroce

Micky Gilbert

Dr. Gerald Gordon

GHS University Medical Center representative

GMC/Equipped for Life representative

Greenville Anesthesiology representative

Greenville Hospital System representative

Greenville Urology representative

Dr. Michael S. Greer

Greenville Radiology PA representative

Dr. M. Hamilton, II

Gordon County Deputy Keith Hansen

Help at Home representative

Dr. Alan R. Hippensteal

Rhonda James

Tiawana Jones

Dr. Charles C. Kanos, MD

Kelly B. Kennett, M.S.

John Kim, PHI

James Lanier

Dr. Sylvester Lee

Dr. Richard Mamrick

Gordon County Deputy Matt Massingill

Medway Air Ambulance representative

Dr. Philip Megison

Dr. J.R. Monroe

Dr. Mitchell L. Mutter

Neurosurgical Group of Chattanooga, PC representative

Joy Odom – Scott Vincent's personal care provider with 'Help at Home'

Dr. Kathleen G. Oxner

Pep Boys representative

GSP Sgt. S. C. Prather

Prosthetic Care, Inc. representative

Radcare of Tennessee, PC representative

Gordon County Fire Dept Capt Doug Ralston

Resource Medical Group, LLC representative

Dr. Amy E. Robbins

Anthony Rogers

Melissa Rogers

Dr. Pamela Salazar (by deposition if not appearing live)

Jennifer Schindler

Dalton Police Officer Shirley

Dr. Paul C. Siffri

Dr. Phillip W. Smith

Southern Home Care Services representative

Steadman Hawkins Clinic of the Carolina representative

Chris Taylor

Courtney Taylor

Debra Thomas

Steven Thomas

Trinity Home Healthcare therapist,

Trinity Home Healthcare home health nurse

Trinity Hospital of Augusta representative

Dr. Harold Tsai

University Surgical Associates representative

Candice Vincent

Dan Vincent

David Vincent

David Wharton

Kathy Willard

Keri Williamson

Robert Williamson

A corporate representative of Defendant

A corporate representative of Nissin Kyogo Co. Ltd. (by deposition if not appearing live).

A corporate representative of Continental Teves, Inc. (by deposition if not appearing live).

Also, all persons identified in Defendant's list of potential witnesses, the medical records, exhibits, and discovery, plus the following:

1. If not appearing live, any witness identified in this section of the pre-trial order may appear by deposition;

2. Anyone mentioned or named in any deposition taken in this case;

3. Anyone mentioned or named in any document produced in the course of discovery in this case;

4. Any and all law enforcement officials and/or emergency and/or other response personnel who participated in the investigation of the accident at issue in this case;

5. Any and all medical providers who may have treated or cared for Scott Vincent after the wreck at issue in this litigation;

6. Plaintiff may seek to call additional witnesses necessary for rebuttal or impeachment purposes;

7. Plaintiff may seek to introduce expert testimony from the investigating officers, medical personnel, as well as retained experts who are identified above.

8. Plaintiff may read portions of or complete depositions of other persons taken in other litigation in response to any deposition designations proffered by Defendant.

**By American Honda Motor Co., Inc.:**

Will Call:

May Call:

1.    Dr. Geoffrey Germane

2.    Dr. Nicholas Durisek

3.    Sgt. Shawn Prather (by deposition if not appearing live)

4.      Captain Doug Ralston (by deposition if not appearing live)

5.      Scott Vincent

6.      Candice Vincent (by deposition if not appearing live)

7.      Jennifer Schindler (by deposition if not appearing live)

8.      Ashley Biles (by deposition if not appearing live)

9.      Chris Taylor (by deposition if not appearing live)

10.     Ron Ely (by deposition if not appearing live)

11.     Matt Massingill (by deposition if not appearing live)

12.     Pamela Salazar, M.D. (by deposition if not appearing live)

13.     Robert Giancroce, Augusta, GA

14.     Theodore Klaus

15.     Dr. James Raddin, Jr.

16.     Dr. Joseph A. Rice

17.     Anyone mentioned or named in any deposition taken in this case.

18.     Anyone mentioned or named in any document produced in the course of discovery in this case.

19.     Any and all law enforcement officials and/or emergency and/or other response personnel who participated in the investigation of the accident at issue in this case.

20.     Any and all medical providers who may have treated Scott Vincent after the accident at issue in this litigation.

21.     AHM may seek to call additional witnesses necessary for rebuttal or impeachment purpose.

17

22.     AHM may seek expert testimony from the investigating officers listed above. AHM expects the officers' testimony to be based on their experience and training as accident investigators.

23.     AHM may read portions of or complete deposition of other persons taken in other litigation in response to any deposition designations proffered by Plaintiff.

**NOTE: COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK <u>THREE</u> COPIES OF THE TYPED WITNESS LIST AT THE PRETRIAL CONFERENCE.**

**16.     All documents and physical evidence that may be tendered at the trial shall be exhibited to and initialed by opposing parties <u>prior to the pretrial conference</u>. All evidence shall be marked by the parties prior to the pretrial conference, and <u>the parties are encouraged to submit a joint exhibit list on a form supplied by the Clerk</u>. If separate exhibit lists are submitted, they shall be submitted on the forms supplied. Duplications of exhibits should be avoided to the extent practicable. Exhibit lists should be submitted to the Court at the pretrial conference. The material therein shall be identified as follows:**

**(a)     A list of documents and physical evidence submitted as joint exhibits.**

**(b)     Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the plaintiff(s). Copies of such exhibits shall be provided to counsel for each other party.**

**Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. <u>Items not objected to will be admitted when tendered at trial</u>.**

**(c)     Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the defendant(s). Copies of such exhibits shall be provided to counsel for each other party.**

**Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. <u>Items not objected to will be admitted when tendered at trial</u>.**

**(d)     Any document or other physical evidence listed by any party and not objected to, or to which objections have been overruled, may be received in evidence on offer by any other party, in the event the listing party does not actually offer it into evidence.**

**(e)     The foregoing shall not be deemed or construed to expand or limit the rules relating to the admissibility of evidence generally.**

The parties agree as follows:

18

The parties shall exchange exhibit lists and the physical exhibits on or before April 22, 2011.

The parties will exchange the physical exhibits on or before April 29, 2011.

The parties shall state their objections to the others' exhibits on or before May 13, 2011 and shall meet and confer on the objections shortly thereafter.

Thereafter the parties shall submit at the pretrial conference a single list of (a) agreed exhibits to which there is no objection, (b) plaintiff's exhibits with the objections and (c) defendant's exhibits with the objections.

**NOTE: COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK THREE COPIES OF THE TYPED EXHIBIT LIST AT THE PRETRIAL CONFERENCE. All exhibits shall be cross-initialed by the attorneys for the parties and properly tagged as required by the Local Rules of this District. This cross-initialing procedure shall be completed when counsel meet to confer on the preparation of the pretrial order.**

**17.   List all witnesses whose testimony by deposition will or may be offered by each party and the specific deposition pages and lines to be offered. All objections by opposing parties to any portions of the deposition(s) shall be set forth with specific reference to the portion of the testimony objected to and the basis therefor.**

   **(a)   Prior to trial, counsel shall confer to eliminate all extraneous, redundant, and unnecessary matter, lapses, and colloquy between counsel in the deposition excerpts. Counsel shall also attempt to resolve all objections to deposition testimony to be offered.**

   **(b)   The parties shall, if practicable, conform deposition exhibit numbers in trial questions and testimony to the numbers of trial exhibits.**

Plaintiff may offer all or a portion of the deposition testimony of any person whose deposition has been taken in this case. In addition, Plaintiff may offer all or a portion of the deposition testimony of Honda's representative, Theodore Klaus, that was provided in this case and, by adoption, in the case of *Juranski v. Honda*. Mr. Klaus stated when his deposition was taken in the instant case that he adopted his deposition testimony from the *Juranski v. Honda* case.

Defendant objects to the plaintiff's purported designation of deposition testimony, above. Plaintiff has not identified the specific transcripts, pages and lines, as the pretrial order requires. It is impossible for Defendant to object to specific testimony based on this vague designation.

If the following witnesses are determined to be unavailable, Honda may offer the following testimony from their depositions:

Ms. Candice Vincent:

8:5-7

29:13-22
40:24-41:12
44:23-25
45:19-46:2
48:6-8
58:12-16
59:16-25
60:1-13
60:21-61:3

Ms. Jennifer Schindler:

5:20-21
9: 15-10:16
11:13-18:17
18:23-19:12
20:13-22:20
28:9-10

Ms. Ashley Biles:

5:18-20
11:18-23
12:14-13:11
14:8-21:16

Capt. Shawn Prather:

5:24-11:12
12:4-14
13:4-14:21
15:2-16:16
17:4-17
17:25-18:1
18:22-19:6
19:11-20:20
21:19-20
21:23-22:20

18.     Each party shall separately provide a memorandum of authorities as to any questions of law likely to arise at the trial, including the merits of plaintiff(s)' claim, defenses asserted, matters of evidence, etc.

19.     Plaintiff(s)' counsel estimates 5-7 days to present plaintiff's case; defendant's counsel estimates 5 days to present the defense.

20.     Plaintiff has not offered to settle.

**Defendant has not offered to settle.**

It appears at this time that there is
\_\_\_\_ A good possibility of settlement.
\_X\_ Some possibility of settlement.
\_\_\_\_ No possibility of settlement.

The parties are mediating the case on March 3. They do not at this time wish to confer with the Court regarding settlement.

**21.    State any other matters which should be covered by pretrial order, including rulings desired of the Court prior to trial.**

Plaintiff may request that the jury view the vehicle. Defendant may object to this.

Defendant seeks to apportion liability and damages between the Defendant and one or more non-parties to this case. Plaintiff objects to any apportionment of liability or damages between Defendant and a non-party and shows that such apportionment is not authorized under Georgia law in this instance. It is undisputed that Plaintiff was not at fault to any degree in causing his injuries or damages and there is only one Defendant in this case. Therefore, apportionment of liability and/or damages is not authorized under O.C.G.A. §51-12-33. Plaintiff therefore intends to file a Motion in Limine or Motion to Strike Defendant's Notices of Non-Party Fault (Doc. Nos. 240, 241) and will submit a separate brief on this issue prior to the pre-trial conference.

Plaintiff mischaracterizes O.C.G.A. §51-12-33 and Honda's Notices of Non-Party Fault, Docs. 240 and 241. The Notices name Candice Vincent and the "phantom driver" as non-parties potentially at fault in the subject accident. Honda is entitled to apportionment of liability between Honda, Ms. Vincent and the "phantom driver."

Honda further seeks to bifurcate the trial of the issues of liability and damages (see paragraph 22 below). For the reasons explained briefly below, Plaintiff objects to Honda's request to bifurcate the trial of these issues. Plaintiff may submit a trial brief on this issue prior to the pre-trial conference.

**22.    State whether or not the issues of liability and damages should be tried separately (bifurcated) and give any other suggestion toward shortening the trial. Where bifurcation is opposed by any party, such party shall state the reasons for such opposition.**

a.    Bifurcation.

American Honda Motor Co., Inc. believes that the issues of liability and damages should be bifurcated. Because this is not a crashworthiness case, it is not necessary for the jury to consider to what extent and how Mr. Vincent was injured in the crash. As this Court has recognized in other cases, bifurcating the trial will shorten the length of trial. The majority of Plaintiff's witnesses will be testifying regarding damages and medical causation (e.g., life care plan expert, economist, friends, and family). Plaintiff will not need to call these witnesses if

Plaintiff cannot establish liability on the part of Honda, saving the Court's resources.  Honda intends to file a motion setting forth the grounds for bifurcation.

Plaintiff Scott Vincent objects to Honda's request to bifurcate trial of the issues of liability and damages. Plaintiff does <u>not</u> seek to recover punitive damages in this case. Bifurcation is unnecessary, inappropriate and would not be in the interest of judicial economy. Scott Vincent is essentially completely paralyzed due to his injuries from this car wreck. From the moment the jury first sees Mr. Vincent at the trial in his specialized wheelchair they will know that he is paralyzed and, therefore, that his injuries are catastrophic in nature.  That fact simply cannot be hidden from the jury as Honda would apparently like to do.  In other words, that "egg can't be unscrambled."

Moreover, in order to explain the how this wreck occurred and the causation of Mr. Vincent's injuries, which is required to establish 'proximate cause,' the jury will have to be informed that his neck was broken and that he is paralyzed because of this wreck.  This case is no different than most every other case involving personal injury to a plaintiff where there is no good reason to bifurcate the issues of liability and damages.  However, in this instance there is even less reason to try to conceal the Plaintiff's injuries from the jury because by simply seeing Mr. Vincent at trial the jury will already know that he is a quadriplegic.  Thus, Honda cannot somehow be unduly prejudiced by the jury knowing the extent of Mr. Vincent's injuries as part of Plaintiff's case. Moreover, what amounts to separate trials on the issues of liability and damages will waste this Court's time and unnecessarily require multiple deliberations by the jury.

  b.  Confidential Information.

The parties may use confidential information during the course of the trial.   They stipulate, and the court orders, that the mere fact that confidential information is displayed to the jury or received into evidence does not, of itself, abrogate the confidentiality to which the documents or information are entitled.  The parties shall work with the clerk to take such steps as they deem appropriate to maintain confidentiality without prolonging or complicating the trial. The clerk is authorized to seal exhibits and portions of the transcript at the request of either party, without prejudice to another party or a non-party to move that confidential protections for particular documents or information be lifted.

**23.  In cases where either party requests bifurcation of issues or a special verdict, submit a copy of the proposed verdict as PLAINTIFF'S ATTACHMENT "C" and/or DEFENDANT'S ATTACHMENT "C" hereto.  Lead counsel are to discuss and agree on such special verdict where possible.  Where agreement is not reached, state the basis for any objections to the special verdict request.**

Plaintiff submits his proposed verdict form attached hereto as "Plaintiff's Attachment "C." Plaintiff objects to Defendant's request for a special verdict and objects to the proposed verdict form submitted by Defendant at "Defendant's Attachment 'C'."

24.    In non-jury cases, the parties shall each file their proposed findings of fact, summary of depositions, and conclusions of law not later than one week prior to the assigned trial date.

Not applicable.

25.    The final proposed pretrial order shall be signed by counsel for each party and shall contain a final paragraph, as follows:

IT IS HEREBY ORDERED that the foregoing constitutes a PRETRIAL ORDER in the above case(s), that it supersedes the pleadings which are hereby amended to conform hereto and that this PRETRIAL ORDER shall not be amended except by ORDER OF THE COURT.

This _____ day of _____, 2011.


_____
UNITED STATES DISTRICT JUDGE

**ATTACHMENT A**

PROPOSED STIPULATIONS

1.      The crash occurred on Interstate 75 south, 1.8 miles north of its intersection with GA 136.  Candice Vincent was driving the Accord Coupe and Scott Vincent was the front seat passenger.

2.      The subject vehicle is a 1999 Honda Accord Coupe, VIN 1HGCG3258XA025771.  It was manufactured in Marysville, Ohio in June, 1999.

3.      In this case, the parties stipulate that American Honda Motor Co., Inc. stands in the shoes of the Honda companies that designed, manufactured and tested this vehicle, and American Honda Motor Co., Inc. is the proper defendant.

4.      Ms. Candice Vincent purchased the Accord Coupe used on December 3, 2001 from Gerald Jones Honda.  There were 18,046 miles on it at the time of the purchase.

5.      There were at least 107,000 miles on the Accord Coupe when the crash occurred on June 12, 2006.

6.      The parties stipulate that all medical, employment, insurance company and vehicle maintenance documents and photographs are authentic.  No party need call a witness for the purpose of authentication.

7.      The parties stipulate that the documents that were (a) produced by Honda and (b) generated by Honda are authentic business records.

## ATTACHMENT B-1

### PLAINTIFF SCOTT VINCENT'S PROPOSED VOIR DIRE

1.    Have you ever been selected as a juror in a civil case, as opposed to a criminal case, where one of the parties had suffered personal injuries and sought compensation from the other party?

    a.    If so, did the jury you served on return a verdict in that case?

    b.    Have you ever served as a foreperson on a jury?

2.    Have you or any member of your family ever been involved as a party in a civil lawsuit, either as a plaintiff or defendant (excluding a divorce proceeding)?

3.    Have you any member of your family ever been represented by any of the attorneys who represent the parties in this case, or do you know any of these attorneys in any way, or know any of the employees of their law firms:

    a.    James Carter of the law firm Hurt, Stolz & Cromwell.  Their offices are in Athens and Savannah, GA;

    b.    Kenneth Royal of the law firm Royal & Vaughan, PC in Savannah, GA;

    c.    Clay Stebbins of the law firm Warlick, Tritt, Stebbins & Murray, LLP in Augusta, GA;

    d.    Charles Reed of the law firm McKenna Long & Aldridge in Atlanta, GA;

    e.    Jill Kuhn of the law firm McKenna Long & Aldridge in Atlanta, GA;

    f.    Suneel Gupta of the law firm McKenna Long & Aldridge in Atlanta, GA;

    g.    Chris Spencer of the law firm of O'Hagan Spencer in Richmond, VA.  Do any of you know each other?  Do you recognize a friend on the panel?

4.    Do you or any member of your family have any legal training?

5.    Do you or any member of your family have any medical training?

6.    Have you or any member of your family ever worked in the automobile business making cars – selling cars – fixing cars?

7.   Have you or any member of your family ever worked in the insurance business, whether as an agent, underwriter, claims adjuster or in some other capacity?

8.   Have you or any member of your family ever worked in a position that required investigation; that is, a police officer, private investigator, an insurance adjuster, or the like?

9.   Do you or any member of your family have any special training or experience in any of the following areas: accident reconstruction, engineering, product design?

10.  Have you or a family member ever been a professional driver (i.e., cab driver, chauffer, over the road truck driver, courier, limousine driver, etc)?

11.  Have you or any member of your family ever worked in quality control or product safety for a manufacturer?

12.  Have you or any member of your family worked for the National Highway Traffic Safety Administration or any governmental agency that is charged with responsibilities related to the manufacture and sale of motor vehicles?

13.  Have any of you ever testified in a court of law?  If so, what type of case was it that you testified in, civil or criminal?

14.  The matter that is before the Court today is a civil case, not a criminal case.  The standard of proof required in a civil case is very different than that required in a criminal case.  In criminal cases, the burden of proof for conviction of a defendant is proof of the charge "beyond a reasonable doubt."  However, in a civil case like the one that is now before the Court today the burden of proof that must be met in order to hold the defendant liable is by what is called "a preponderance of the evidence" which is completely different than in a criminal prosecution.  A preponderance of evidence, which is the standard of proof used

in civil cases like this one, simply means an amount of evidence that is enough to persuade you that a fact is more likely true than not true, even thought there may be some room for reasonable doubt.   Does anyone here have any problem with deciding this case based on the rule that in civil cases like the one here today the Plaintiff must prove his claims only by a "preponderance of the evidence" and not "beyond a reasonable doubt" like is required in criminal cases?

15.   This case involves an incident where Scott Vincent, who is the Plaintiff in this lawsuit, was seriously injured when the 1999 Honda Accord Coupe in which he was riding as a passenger spun out of control, struck a guard rail, rolled over and his neck was broken. This automobile wreck occurred in 2006 on I-75 near Calhoun, GA which is located in northwest Georgia.   From any source whatsoever, do you know, or have you heard, anything at all about this matter before now?   If so, what have you heard?

16.   Are you familiar with I-75 in the area of Calhoun, GA?   If so, explain.

17.   In this case, this incident occurred while Ms. Candice Vincent was driving a 1999 Honda Accord Coupe.   Her husband, Scott Vincent, was sitting in the right front passenger seat. They were driving south along I-75 when a car going in the same direction on I-75 pulled into their lane from the right.   To avoid colliding with this other car that had moved over into her lane of the roadway, Ms. Vincent steered her car to the left to move over; she then steered her car back to the right to re-enter the lane that she had been in so that she would not hit a guard rail that was to her left in the median of the roadway.   The two cars did not hit or make contact with each other.   When Ms. Vincent steered her car back to the right it spun out of control and went across three lanes of the highway, hit the guard rail on the other side and turned over.   Mr. Vincent was injured in that crash.   Mr.

Vincent has brought this lawsuit against Honda, the company that made the car, and he claims that the 1999 Honda Accord Coupe in which he was riding as a passenger was defective because it spun out when it should have remained controllable.  Having heard only this very brief outline of what this case is about, and without knowing more, do any of you automatically place all the blame on the driver that drove his or her car over into the lane of I-75 that Ms. Vincent was driving in as it passed by the Vincent's car, or blame Ms. Vincent for causing the wreck; or on the other hand, do each of you feel that you would be able to fairly consider evidence that the Plaintiff intends to present in this case that the handling characteristics of the Honda Accord Coupe was too unstable in an emergency situation like this, and had the car been sufficiently stable and controllable this wreck would not have happened?   In other words, could each of you keep an open mind as to whether or not the Honda car in question in this case was unreasonably dangerous when used in an emergency accident avoidance maneuver such as Candice Vincent performed in this case?  [Please permit follow up by counsel]

18.   Have you, any member of your family or a close friend ever been involved in a motor vehicle wreck while either driving a Honda vehicle or as a passenger in a Honda vehicle? If so, explain the circumstances of that wreck and whether or not anyone was injured.

19.   Have you or any of your family members or close friends ever been injured while either driving or as a passenger in an automobile or truck, regardless of the make or model of that vehicle?  If so, please tell us about that.

    a.   Was a lawsuit filed?

    b.   If so, against whom?

    c.   What was the outcome?

d. Were you satisfied with the outcome?

e. Was the car in which you, your family member or friend were in a Honda vehicle? If so, what type of vehicle was it?

20. Do you, a family member, or a close friend suffer from any serious physical impairment or disability? -- and that would include, but not necessarily be limited to, a spinal cord injury that involves partial or even total paralysis. (If yes, please describe the person's relationship to you and a brief description of the disability and the cause of the impairment).

21. Are any of you a current or former employee of the Honda Motor Company or any of its operating divisions?

22. Do you or any member of your family know any present or past employee of the Honda Motor Company or any of its operating divisions?

23. Have you or any member of your family ever been a shareholder of the Honda Motor Company. In other words, have you ever owned any of the stock of this company and if so, do you own Honda stock at this time?

24. Do you or any of your family members currently own, or have you ever owned, a car, a truck or a motorcycle made by Honda? If so, identify the type of vehicle this was.

25. Has anyone ever had any complaints about Honda vehicles?

26. Have you ever received a recall notice or a manufacturer's notice of a service action regarding your motor vehicle or a vehicle part? How about from Honda? (If yes, please describe the nature of the notice and your response to it).

27. Has anyone ever had a vehicle spin or slide out of control while you were swerving to avoid another vehicle? Do you know anyone who has? Please tell us what happened.

28.   Has anyone ever had to quickly steer your car or truck to one side, whether to the left or right, and then back again in the other direction at highway speeds in order to avoid another vehicle that was moving over into your lane?  Do you know anyone who has?  Please tell us what happened?

29.   Have you, any member of your family, or a close friend been injured as a result of a vehicle spinning or sliding out of control during an emergency steering maneuver while trying to avoid another car or something that was in the road?   If so, please tell us about that.

30.   Do you or does anyone you know have experience in vehicle or machine design?

31.   Have you ever worked in a tire store or for a company that makes tires?

32.   Do you or does anyone you know have experience in electronic control systems?  What about computer controls in machines such as automobiles or industrial machinery?  Please explain.

33.   As the Court has stated to you, the Plaintiff in this case, Scott Vincent, contends that he has been catastrophically injured and that he is now a quadriplegic, or in other words, that he is almost totally paralyzed below his neck, because of certain defects in the Honda car that is in issue in this case.  As a result of these injuries, Mr. Vincent contends that he has suffered damages that are fairly valued in the many millions of dollars.  Consequently, the Court and the parties need to know whether or not because of the nature and extent of the injuries claimed by Mr. Vincent, any member of this jury panel feels that there is some arbitrary or specific amount of money beyond which you could not award damages, even if the evidence and the law of the case have led you to find liability against the

Defendant, simply because the number is very large?  If so, please explain why you feel that way.

34.   In this action, Plaintiff seeks to recover monetary compensation from the Defendant, Honda.  Is there any member of this panel who feels that, for whatever reason, such cases simply should not be brought, even though state and federal law permits lawsuits like this one?

35.   Before hearing the evidence in this case, is there any member of this panel who feels that, for whatever reason, monetary damages should not be awarded for a catastrophic injury such as quadriplegia even if the law allows it?

36.   Have you ever worked with persons known as experts or expert witnesses?   If so, please explain how you have done that.

37.   Would any member of this panel hold an ordinary driver of a car to the same driving standards that you would to an expert driver who is trained and has experience in driving automobiles at and beyond their design limits?

38.   Have you ever watched shows or exhibitions where professional drivers performed driving stunts with vehicles?

39.   Have you ever heard the term "directional stability?"  If so, what does that term mean to you?

40.   Have any of you ever had driver training in which you drove vehicles to the limit of their handling capability?  Do you have family or friends who have had this type of driver training?  If so, please tell us about that.

41.     Have any of you seen news reports from any source regarding the dangers arising from vehicles that have problems with directional stability, or a tendency to spin or slide out to easily?  If so, please tell us about that.

42.     Have you ever heard the terms "oversteer" or "understeer?" If so, what do these terms mean to you?

43.     Have you ever heard the term "Electronic Stability Control," or it is sometimes called, "ESC"?   If so, what does that term mean to you?

44.     Do any of you buy the tires for your car?

  a.     If so, do you rely on the recommendation of your tire dealer for the quality and size of the tires you buy?

  b.     Have you ever changed brands or the tire size on your vehicle?  If so, please tell us about that.

45.     Who among you has read all of the Owner's Manual to your car?

  a.     Who has read portions of it?

  b.     And who uses your car's Owner's Manual as a reference manual to check on things you cannot readily figure out?

46.     Have any of you ever had driver training in which you drove vehicles to the limit of their handling capability?  Do you have family or friends who have had this type of driver training?  If so, please tell us about that.

47.     Have any of you seen news reports from any source regarding the dangers arising from vehicles that have problems with directional stability, or a tendency to spin or slide out to easily?  If so, please tell us about that.

48.  Have any of you ever been asked to describe an event after a dangerous or very stressful situation occurred such as a car wreck, an injury or a robbery?

49.  Anyone here ever been accused of lying when you were not?  How did that make you feel?

50.  Would everyone on the jury panel agree that a company, just like a person, ought to take responsibility and be held accountable when they make a mistake?

51.  Would everyone on the jury panel expect a company to follow its own rules and procedures?

52.  Does anyone disagree with the proposition that if a car company has a safety feature available that would reduce or eliminate a risk of serious injury or death, and installing the safety feature would not impair the operation of the car, then the manufacturer should install that safety feature on their cars?

53.  Does anyone think there are certain kinds of lawsuits that should not be allowed to be brought in court, even if the law permits it?   If so, please explain.

54.  Is anyone familiar with the term "tort reform?"

55.  Does anyone have a strong belief one way or the other, either for or against, tort reform?

56.  Does anyone believe there should be a cap or some arbitrary limit on the amount of damages a person can recover for a catastrophic injury such as quadriplegia, regardless of what the evidence shows about the extent of the damages suffered by the injured person?

57.  Full and fair damages in this case may be a very large sum of money because of the many elements of the Plaintiff's damages.  Does the idea of awarding a large verdict, should Plaintiff Scott Vincent prove his claim, somehow offend you in any way?

58. The Defendant in this case is not an individual, it is a corporation. Is there anyone here who, for whatever reason, does not believe that they can hold a corporation accountable even if the evidence and law in this case show you should do so?

59. If a company is aware that a product it manufactures poses a serious risk of injury or death to the people who use that product, would everyone expect that company to promptly do something to address those risks like possibly changing the design or even recalling the product?

60. Do you or any member of your family have a job in which you enforce company policies and procedures?

61. Would the fact that a few months ago the federal government bailed out General Motors and Chrysler, but not Honda, have any effect at all on your ability to sit in judgment of Honda in this case?

62. Is there anything in particular that hasn't been discussed so far today that you feel would cause you to be biased or unfair to either party in this case and, therefore, should be brought to the Court's attention?  If so, please let me hear from you now.

63. This trial may take as long as two to three weeks to complete. Is there any reason, including personal, medical, family or business that would may make it difficult for you to participate for this period of time?  If so, please explain.

## ATTACHMENT B-2

## AMERICAN HONDA MOTOR CO., INC.'S PROPOSED VOIR DIRE

### Honda, Japanese and Imports

1.    What vehicles does your family have?

2.    Have any of you ever owned or driven a Honda vehicle?

    a.    What can you tell us about that experience?

    b.    Do you have any impressions of Honda vehicles as a result?

3.    Do you know of anyone who has owned a Honda vehicle?

    a.    What can you tell us about that?

    b.    Do you have any impressions of Honda vehicles as a result?

4.    What are your impressions of Honda vehicles?

5.    What impressions do you have of:

    a.    Japanese people?

    b.    Japanese vehicles?

    c.    Japanese products?

    d.    Imports in general?

6.    Is there anything about the fact that Honda is the defendant that might cause you to favor one side or the other?

7.    Is there anything about the fact that a Japanese company is the defendant that might cause you to favor one side or the other?

8.    American Honda is affiliated with Japanese companies.  Is there anything about that fact that might cause you to favor one side or the other?

9.    Does anyone have any particular bias against corporations?

10.     Does anyone have a particular bias against foreign corporations?

11.     Does anyone tend to favor a Georgia individual in a dispute with a non-Georgia corporation?

12.     Does anyone have any feelings for or against the one side because of who is on that side in this case?

<u>Liability Issues</u>

13.     In this case, the plaintiffs claim that there was a problem with the handling of this vehicle.  Have any of you ever had a problem with a vehicle's handling?

14.     Do you know of anyone who has had such problems?

15.     Is there anything about that situation that might cause you to favor one side or the other in this case?

16.     Have you ever had a vehicle you considered to be defective?

17.     Do you know of anyone who had a vehicle that was defective?

18.     Do any of you have any engineering background?

        a.     Please elaborate.

<u>Prior Crashes and Litigation</u>

19.     Have you or anyone you know ever been involved in a car crash?

        a.     Were you/they injured?

        b.     What were the circumstances?

20.     Have any of you or any of your family members or close friends ever made a claim or been involved in a lawsuit?

        a.     Please explain.

b.      Is there anything about that experience that might cause you to favor one side or the other in this case?

21.     Do any of you feel that if someone is in a crash, or has had some injury, they ought to get some money for it?

a.      Even if no one else is at fault?

## Injuries

22.     Have any of you or your family members or close friends ever had a spinal cord injury?

a.      Please explain.

23.     Have you or any close family members or friends ever been disabled?

a.      Please explain the circumstances.

b.      Was this the result of an accident of some kind?

24.     Do any of you feel that, because Mr. Vincent has a significant injury, you should find a way to get him some money?

25.     Does everyone understand that Mr. Vincent is not entitled to any recovery unless and until he proves that his vehicle had a defect that caused his injury?

## Conclusion

26.     I have asked you a great many questions.  Is there any question that you did not answer that you now think you should have answered?

27.     Do you have any bias or preference for either side for any reason?

28.     Is there anything that you know of that might cause you to favor one side or the other in this case?

## PLAINTIFF'S ATTACHMENT "C"

## PLAINTIFF SCOTT VINCENT'S PROPOSED JURY VERDICT FORM:

## VERDICT

Select "A" or "B" below by placing a check mark beside your response.  If you find for the Plaintiff, write in the dollar amount of your verdict in the blank provided below.

A._____  We, the jury, find in favor of Plaintiff Scott Vincent in the amount of

$_____.


B._____  We, the jury, find in favor of Defendant American Honda Motor Company, Inc.


SO SAY WE ALL, this _____ day of _____ 2011.



_____
FOREPERSON

## DEFENDANT'S ATTACHMENT "C"

## AMERICAN HONDA MOTOR CO. INC.'S PROPOSED JURY VERDICT FORM

## LIABILITY - PHASE I

**Please follow the instructions and answer questions "YES" or "NO" by placing a check mark beside your response:**

We, the jury, return the following verdict:

1.     Did the plaintiff prove by a preponderance of the evidence that the 1999 Honda Accord Coupe was defectively designed?

YES_____                    NO_____

**If your answer to question 1 is "NO," then you should answer no more questions and then sign and date this verdict form. If your answer to question 1 is "YES," please answer questions 1(a) and 1(b) and then answer question 2.**

1(a).   Did the plaintiff prove by a preponderance of the evidence that the 1999 Honda Accord Coupe was defective because it was a conventional vehicle instead of an ESC vehicle?

YES_____                    NO_____

1(b).   Did the plaintiff prove by a preponderance of the evidence that the 1999 Honda Accord was defective because it had unreasonably dangerous handling characteristics?

YES_____                    NO_____

2.     Do you find by a preponderance of the evidence that a defect in the design of the 1999 Honda Accord was the proximate cause of the crash?

YES_____                    NO_____

**If you answered "YES" to question 2, please go to question 3. If you answered "NO" to question 2, then you should answer no more questions and should sign and date this verdict form.**

3.      Do you find from a preponderance of the evidence that Candice Vincent was negligent in driving the 1999 Honda Accord?

                YES_____              NO_____

**If you answered "YES" to question 3, please go to question 4.  If you answered "NO" to question 3, then please proceed to question 6.**

4.      Do you find from a preponderance of the evidence that Ms. Vincent's negligence was a proximate cause of the crash?

                YES_____              NO_____

5.      Do you find from a preponderance of the evidence that the Phantom Driver was negligent in driving his vehicle?

                YES_____              NO_____

**If you answered "YES" to question 5, please go to question 6.  If you answered "NO" to question 3, then please proceed to question 7.**

6.      Do you find from a preponderance of the evidence that Ms. Vincent's negligence was a proximate cause of the crash?

                YES_____              NO_____

7.      State the percentage of any negligence that proximately caused the crash (Total responsibility of all entities must equal 100%):

                Candice Vincent                                    _____ %
                (Fill in only if you answered YES to Questions 3 and 4)

                Phantom Driver                                    _____ %
                (Fill in only if you answered YES to Questions 5 and 6)

                American Honda Motor Co., Inc.              _____ %
                (Fill in only if you answered YES to Questions 1 and 2)

SO SAY WE ALL, this _____ day of _____ 2011.


_____
FOREPERSON

## PHASE II - DAMAGES

By answering the following question, you will determine the damages, if any, Scott Vincent sustained as a result of the incident in question. In determining the amount of damages, do not make any reduction because of the negligence, if any, of Candice Vincent or the Phantom Driver. If you find that Candice Vincent or the Phantom Driver were to any extent negligent, the court will make an appropriate reduction in the damages awarded.

What sum of money do you find by a preponderance of the evidence to be the total amount of damages for injuries sustained by Scott Vincent?

$ _____

SO SAY WE ALL, this _____ day of _____ 2011.


_____
FOREPERSON

42